UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DANIEL LLOYD KAMPS,           )
                              )
      Plaintiff          )
                              )
v.                            )    No. 2:12-cv-221-NT
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security,[1] )
                              )
      Defendant          )

REPORT AND RECOMMENDED DECISION[2]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge failed to give appropriate weight to the opinions of two of his treating physicians, should have found that his depression and anxiety were severe impairments, and improperly evaluated his credibility. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, Finding 1, Record at 20; that he suffered from degenerative disc disease of the lumbar spine and kyphosis of the thoracic

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument, at which counsel for the plaintiff appeared with permission by telephone, was held before me on March 15, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

spine, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 20-24; that he retained the residual functional capacity ("RFC") to perform light work, so long as he avoided overhead work, sat, stood, or walked no more than a total of six hours each in an eight-hour workday, was limited to occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs, and never climbed ladders, ropes, or scaffolds, Finding 5, *id.* at 26; that he could perform his past relevant work as a pharmacy technician, Finding 6, *id.* at 29; and that, therefore, he had not been under a disability, as that term is defined in the Social Security Act, at any time before his date last incurred, Finding 7, *id.* at 30.  The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner.  20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work.  20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20

C.F.R. § 404.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. (quoting Social Security Ruling 85-28).

## I.  Discussion

### A.  Step 2 Issue

The plaintiff contends that the administrative law judge should have found that his depression and anxiety were both severe impairments. Plaintiff's Statement of Errors ("Itemized Statement") (ECF No. 9) at 15-17. Specifically, he faults the administrative law judge for relying on the opinion of one state-agency psychologist and rejecting that of another, when the second was completed only after review of notes from a treating physician that were not available to the first. *Id*. at 16.

The administrative law judge wrote the following about the plaintiff's claimed mental impairments in the years 2007 and 2008:

> …[Primary care physician] Dr. [Jose] Ma referred the claimant to psychiatrist[] Julie Stancliff, M.D., in December of 2006.

3

> Dr. Stancliff examined the claimant in December of 2006. The claimant appeared well groomed with intact concentration, attention, and memory. Judgment and insight were fair. Assessment was a panic disorder. Global assessment of functioning score of 60 indicated mild impairment in social and/or occupational functioning. On January 3, 2007, the claimant noted a significant decrease in anxiety. Dr. Stancliff continued Klonopin and Trazadone. The claimant remained stable through September of 2008. On November 5, 2008, the claimant was started on Suboxone for withdrawal from opiates.
>
> On November 12, 2008, the claimant voluntarily presented for inpatient care for continued titration of Suboxone, passive suicidal thoughts, and monitoring of his mental status. Dr. Stancliff noted that the claimant was alert and oriented times three but slightly anxious with increased psychomotor activity. Insight and judgment were good and memory, concentration and attention were intact. The claimant improved on medication with dissipation of his withdrawal symptoms and was cooperative and agreeable. Dr. Stancliff discharged the claimant to outpatient follow-up on November 13, 2008 with improved mood and normal psychomotor activity. Diagnoses were opiate dependence, opiate withdrawal and a panic disorder without agoraphobia. Global assessment of functioning score of 55 indicated moderate impairment in social and/or occupational functioning. The claimant remained on Suboxone but reported developing a possible tolerance to this medication on March 11, 2009.

Record at 21 (citations omitted). With regard to 2009, the administrative law judge stated the following:

> Janis Chester, M.D., a psychiatric consultant for the State agency, examined the claimant on March 27, 2009. The claimant reported a long history of anxiety . . . . Mental status examination showed some psychomotor retardation. The claimant sat in a slumped posture and had a subtly dominating interview style. The claimant did not answer any questions in a direct manner but answered in a very slow measured way with extraneous details. Examination showed a depressed/down mood and blunted affect; however, the cla[i]mant was alert and oriented in all spheres. Thought processes were circumstantial but immediate and long-term memory was intact. Short-term memory was intact to two of three objects spontaneously and improved to three of three with prompting. The claimant's concentration and abstraction were intact. The claimant reported suicidal ideation but no intent. Insight and judgment were fair. The claimant stated that narcotics allowed him to function better. . . .

> Diagnoses were pain with physical and psychological features and an anxiety disorder, not otherwise specified. A provisional diagnosis of personality disorder was noted on Axis II. Global assessment of functioning score of 50 indicated serious bordering on moderate impairment in social and/or occupational functioning.
>
> . . . Mental status examination in August of 2009 showed a flat affect and neutral mood. Attention, concentration and memory remained intact. Judgment and insight were good. Mental status examination was unchanged on December 5, 2009. . . . On April 3, 2010, the claimant's attention, concentration, and memory remained intact.
>
> On May 4, 2010, Dr. Stancliff stated that . . . working in conjunction with the claimant's primary care physician has resulted in the resolution of the claimant's withdrawal and anxiety symptoms and stated that presently, the claimant has been symptom[-]free from anxiety and depression.

*Id*. at 21-22 (citations omitted). Based upon this medical history, the administrative law judge concluded that "[t]he claimant's medically determinable mental impairment of depression/anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." *Id*. at 22.

The administrative law judge followed this discussion with an analysis of the four functional areas set out in the applicable regulations for evaluating mental disorders. *Id*. at 22-23. This concluded her analysis at Step 2.

Later, the administrative law judge, in the course of her Step 4, analysis, revisited the issue of the plaintiff's alleged mental impairments.

> The undersigned also notes that Hillel Raclaw, Ph.D., a psychological consultant for the State agency, noted the claimant's attention, concentration and long-term memory were intact but that the claimant reported performing household chores slowly. Dr. Raclaw opined that the claimant's mental impairments cause no more than mild limitation in concentration, persistence or pace and thus the claimant's mental impairments are not "severe." The undersigned notes that D. Shapiro, Ph.D., reviewed the written evidence in September of 2009 and concluded that the claimant's mental impairments cause moderate limitations in interpersonal relations and possibly adaptation and that the

>claimant's persistence and pace are moderately affected by a combination of the claimant's mental and physical impairments. Dr. Shapiro found one to two episodes of decompensation but did not note those episodes. . . . The undersigned has considered the opinion of Dr. Shapiro but finds the opinion of Dr. Raclaw more consistent with the claimant's intact attention, concentration and memory and the statements of treating psychiatrist, Dr. Stancliff, that claimant has significantly improved. She provided a letter dated May 4, 2010 in which she wrote that she had treated the claimant since December 2006 and that he was at that point experiencing withdrawal symptoms from opiate and benzodiazepine medication. She and Dr. Ma were able to stop his withdrawal and anxiety symptoms, and presently the claimant has been symptom free from anxiety and depression.

*Id*. at 28-29 (citations omitted).

Assuming *arguendo* that the plaintiff's attack on the administrative law judge's reasoning at Step 4 may also be applied to her reasoning at Step 2 of the evaluation process, the administrative law judge may have "ignore[d]" the fact that Dr. Raclaw did not review any of Dr. Stancliff's treatment notes, Itemized Statement at 16, but the plaintiff ignores the fact that Dr. Stancliff wrote, as the administrative law judge noted, Record at 22, in her most recent entry[3] in the medical records, that she and Dr. Ma "were able to stop his withdrawal and anxiety symptoms" and that "[p]resently, Mr. Kamps has been symptoms free from anxiety and depression." *Id*. at 728.

That letter was not available to Dr. Shapiro, upon whose record review dated September 14, 2009, the plaintiff contends that the administrative law judge should have relied. *Id*. at 668; Itemized Statement at 16-17. To the contrary, the administrative law judge reasonably relied on Dr. Stancliff's most recent opinion concerning the plaintiff's alleged mental impairments.

No error in the administrative law judge's conclusion at Step 2 has been demonstrated.

---

[3] The most recent date on Dr. Stancliff's medical records is June 4, 2009. Record at 594. The date of the letter, which includes the quoted statement, is May 4, 2010. *Id*. at 728.

### B. Credibility

The plaintiff argues that the administrative law judge's conclusions about his credibility with respect to his alleged mental and physical impairments was based upon "the wrong legal [theory]" and that there was insufficient evidence to uphold those conclusions, *Id.* at 17-20. To the extent that this argument addresses the plaintiff's alleged mental impairments, my conclusion that the administrative law judge supportably determined that those impairments were not severe renders this objection moot.[4]

The plaintiff contends that the administrative law judge wrongly "evaluate[d] the consistency of [his] statements . . . against the [administrative law judge's] own RFC" rather than "compar[ing] the claimant's testimony against the evidence of record." Itemized Statement at 19. He cites two Seventh Circuit opinions criticizing the language used by the administrative law judge in this case. *Id.* However, the language at issue, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[,]" Record at 27, has not been rejected as "meaningless boilerplate" in this circuit and has been found by this court to be sufficient, in the context of each individual case, on many occasions. *See, e.g., McLaughlin v. Astrue*, No. 1:11-cv-365-JAW, 2012 WL 3042944, at *5 (D. Me. July 5, 2012); *Murphy v. Astrue*, No. 2:11-cv-241-NT, 2012 WL 1067683, at *3 (D. Me. Mar. 29, 2012).

The administrative law judge in this case compared the plaintiff's statements with the RFC she assigned to the plaintiff *after* engaging in an analysis of the medical evidence and the

---

[4] An administrative law judge is required to include in an applicant's RFC the effects, if any, of claimed impairments that have been found to be non-severe. 20 C.F.R. § 404.1545(e); *Eshelman v. Astrue*, No. 06-107-B-W, 2007 WL 2021909, at *4 n.8 (D. Me. July 11, 2007), but, in the instant case, the plaintiff has not identified any effects of his alleged anxiety and depression that he contends should have been included in his RFC.

plaintiff's statements. That is clear from the very language that the plaintiff attacks: the administrative law judge discounted the plaintiff's statements to the extent that those statements were inconsistent with the *assessment* that led to the administrative law judge's conclusions about the plaintiff's RFC, not with the RFC itself.

That assessment occupies three single-space typed pages. It includes the following observations about the plaintiff's credibility:

- Dr. Ma's records show complaints of chest pain and dyspnea. "However, stress testing and myocardial profusion scan in November of 2005 were normal." Record at 24.

- The plaintiff presented to John Mulvey, M.D., in June 2007 with complaints of back pain, pain radiating down the right leg, spinal pain, abdominal pain, and paresthesias in his foot, yet "he remodeled a bathroom the past January 2007, and did a lot of construction work despite his back pain and finished that project in February of 2007. The claimant also stated that he was exercising regularly for twenty minutes most days, was 'pretty' active at work, watched his granddaughter, was working at home, maintaining a forty foot boat, and doing daycare. . . . CT scan of the abdomen showed no findings to account for the claimant's complaints of pain." *Id*.

- Pawan Rastogi, M.D., examined the plaintiff on January 28, 2009, and noted that his symptoms were "very diffuse and very difficult to localize. In addition, Dr. Rastogi noted the claimant's MRI did not show much in the way of disc herniation or nerve root compression and advised conservative treatment with exercise and activity restrictions. . . . In a May 27, 2009 treatment note, Dr.

> Rastogi wrote that although the claimant expressed significant back pain, his MRIs of five months ago "were 'fairly benign,' but he is convinced that there is a problem." *Id*. at 25.

- Douglas Wright, M.D., examined the plaintiff for the state disability agency; his examination showed "normal strength and full range of motion of all extremities and in the cervical and lumbar spine." *Id*.

- "June 19, 2009 treatment note indicated claimant climbing up and down a lot in his three story house, managing his boat three days per week, and having a lot of activity around his house." *Id*.

- Dr. Mulvey "noted that a[n] MRI study of the claimant's lumbar spine in January 2009 showed diffuse but mild spondylosis with no obvious neural compression . . . . On June 19, 2009 . . . [t]he claimant's hypertension and chronic pain was controlled." In April, 2010, "flexion and extension MRI studies of the lumbar spine showed no focal instability, no focal hypermobile segments and only mild spondylitic changes with neuroforaminal narrowing and facet arthritis at L4-L5. Dr. Mulvey noted the etiology of the claimant's report of upper abdominal and thoracic pain was more elusive." *Id*. at 26.

This is a partial list of inconsistencies noted by the administrative law judge in her RFC assessment.

The plaintiff faults the administrative law judge for failing to mention certain medical evidence that could be construed as consistent with his complaints about the intensity, persistence, and limiting effects of his symptoms, Itemized Statement at 19, but the administrative law judge is not required to recite all of the medical evidence of record. He or she

is merely required to base a conclusion about a claimant's credibility on substantial evidence. That was done in this case. *See, e.g., Murphy*, 2012 WL 1067693 at *3-*4; *Anderson v. Astrue*, No. 1:11-cv-109-DBH, 2012 WL 283018, at *5 (D. Me. Jan. 30, 2012) (administrative law judge may properly take into consideration activities of daily living in assessing credibility).[5]

The plaintiff is not entitled to remand on this basis.

### C. Treating Physicians

The plaintiff asserts that the administrative law judge "failed to follow the treating physician rule" by misconstruing the records of Dr. Mulvey, suggesting that his opinions should have been given controlling weight. Itemized Statement at 11-15. The "rule" to which he refers is 20 C.F.R. § 404.1527(c)(2), which provides, in relevant part:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

The administrative law judge had the following to say about Dr. Mulvey's opinions:

> The undersigned notes that Dr. Mulvey, the claimant's primary care physician, opined that the claimant could lift 10 pounds occasionally and 5 pounds frequently and stand/walk up to 2 hours intermittently but that the claimant would have to lie down after 4 hours of activity and take unscheduled breaks. The claimant has no limitations in his ability to reach, handle, finger and grasp, turn to twist objects. Dr. Mulvey opined

---

[5] In this regard, the plaintiff mistakenly asserts that Magistrate Judge Cohen's recommended decision in *Plourde v. Barnhart*, No. 02-cv-B-W, 2003 WL 22466176, at *4 (D. Me. Oct. 31, 2003), stands for the proposition that "the ALJ is not free to ignore relevant evidence or pick and choose from the *sub silent[i]o* when evaluating the medical evidence." Itemized Statement at 20. The opinion actually says that an administrative law judge is not free to "implicitly reject[] all" of the record evidence of mental limitations; "[h]e was not free to choose simply to ignore this uncontradicted evidence, or pick and choose from it *sub silentio*, to craft an RFC." 2003 WL 22466176 at *4.

>that the claimant's pain, fatigue and other unspecified symptoms would interfere with the claimant's attention and concentration frequently and that the claimant is not capable of performing even low stress work or hold any sort of gainful employment. The claimant would miss more than three days a month from work. However, Dr. Mulvey appears to have based his opinion on the claimant's report of subjective symptoms and self-reported limitations, as there is no instability or nerve root compression in the claimant's lumbar spine and his strength is normal. In addition, Dr. Mulvey's limitations are inconsistent with the claimant's activities of daily living. Thus, the undersigned gives no weight to the opinion of Dr. Mulvey. Additionally, from reading Dr. Mulvey's notes from 2007-08 that "per Dr. Stancliff's recommendation, I stressed the need for patient to have at least part time work out of the house work, gave examples of patients I've known who are gainfully employed despite chronic pain issues, encouraged patient that he could do this too[.]"

Record at 28.

The state-agency physicians who reviewed the plaintiff's records, including those of Dr. Mulvey available at the time they performed their reviews, did not agree with the limitations that Dr. Mulvey imposed. *Id.* at 495-502; 660-67. This substantial evidence is not consistent with Dr. Mulvey's recommendations and means that Dr. Mulvey's opinions cannot be given controlling weight. *E.g., Angis v. Astrue*, No. 06-154-P-S, 2007 WL 2021921, at *2 (D. Me. July 11, 2007); *Morneau v. Barnhart*, No. 06-53-P-C, 2006 WL 3519315, at *4 (D. Me. Dec. 6, 2006); *Northrup v. Barnhart*, No. 02-181-B-W, 2003 WL 22466177, at *2 (D. Me. Oct. 31, 2003). The administrative law judge did not err in this regard.

The plaintiff argues in the alternative that the state-agency physicians' opinions are "insufficient to be considered substantial evidence" because Dr. Nakhuda's review "was limited to the report from Dr. Wright, four treatment notes from Dr. Mulvey, and notes from Perkis & Feremz Family Practice," while "it is unclear what records were reviewed" by Dr. Biddison. Itemized Statement at 14.

It is true that Dr. Nakhuda's review, dated March 31, 2009, Record at 502, was probably completed before Dr. Mulvey filled out the questionnaire that provides the basis for the plaintiff's argument, which is undated but was submitted with a cover letter dated September 9, 2009, *id*. at 531, 539. However, Dr. Nakhuda also reviewed an MRI of the plaintiff's lumbar spine dated January 5, 2009, and MRIs of the thoracic and cervical spines, and hospital records, which the itemized statement fails to mention. *Id*. at 502.

Because Dr. Biddison does not list on the physical RFC form that he filled out each of the specific medical records that he reviewed, *id*. at 666-67, the plaintiff takes the position that it must be assumed that he reviewed no records other than the very few that are listed. Itemized Statement at 14. Dr. Biddison's report is also dated before the form completed by Dr. Mulvey upon which the plaintiff relies, *see* Record at 667, but neither that date nor the plaintiff's assumption is determinative.[6]

Dr. Biddison completed his physical RFC form only a few days before the date of Dr. Mulvey's form. The plaintiff may no assume that Dr. Biddison did not review any of the medical records available to Dr. Mulvey. The RFC form itself directs the reviewing physician to "[b]ase your conclusions on **all evidence** in the file[.]" Record at 495, 660 (emphasis in original). The plaintiff is not entitled to an assumption that the reviewing physician did not do so. *Peterson v. Sullivan*, No. 88-1254, 1990 WL 357096, at *4 (D. Idaho Feb. 20, 1990). Thus, the records reviewed by Dr. Biddison were most likely essentially the same records that were

---

[6] The plaintiff does not rely on a second form completed by Dr. Mulvey, which was submitted directly to the Appeals Council well after the administrative law judge's opinion had been issued. Record at 30 (opinion dated August 24, 2010), 736-46 (cover letter dated February 18, 2011). The Appeals Council apparently considered this questionnaire, *id*. at 1, 4, making it possible for this court to consider it as well, *Sargent v. Apfel*, No. 00-171-P-C, 2000 WL 1781838, at *3 n.3 (D. Me. Dec. 24, 2000). The only significant difference I note between the two completed forms is that the first states that the plaintiff is incapable of tolerating even "low stress" at work, Record at 537, while the latter states that he is capable of tolerating low stress in a work environment, *id*. at 744.

available to Dr. Mulvey when he filled out the plaintiff's form. The plaintiff takes nothing by this argument.

Finally, the plaintiff contends that application of the evaluation factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) requires the administrative law judge to credit Dr. Mulvey's opinions over those of Dr. Nakhuda and Dr. Biddison. It is true that the state-agency physicians did not treat the plaintiff, while Dr. Mulvey had treated him for a period of two years and three months, Record at 367, 531, when he first filled out the plaintiff's "multiple impairment questionnaire." 20 C.F.R. § 404.1527(c)(2). Dr. Mulvey's entries on the questionnaire cite some medical signs to support his opinion, but not laboratory findings, and he also indicates that, to some degree, his opinions are based on the plaintiff's reports to him rather than on objective medical evidence. Record at 535 ("unknown" how long after getting up the patient can sit down again), 538 (earliest date to which listed impairments apply is "Jan. 2004 per patient report"). 20 C.F.R. § 404.1527(c)(3).

Contrary to the plaintiff's assertion, and as previously discussed, Dr. Mulvey's opinions are not consistent with the record as a whole, although they may well be supported in part by other medical evidence in the record.[7] 20 C.F.R. § 404.1527(c)(4). The plaintiff complains that neither Dr. Nakhuda nor Dr. Biddison is a "specialist[] in musculoskeletal conditions," Itemized Statement at 14, but, from all that appears, neither is Dr. Mulvey, a family practitioner. 20 C.F.R. § 404.1527(c)(5). Finally, the plaintiff does not contend that "other factors" favor Dr. Mulvey's opinions. 20 C.F.R. § 404.1527(c)(6).

---

[7] However, the plaintiff's assertion that Dr. Mulvey's opinions "are also supported by the examining neurosurgeon, Dr. Fisher, who opined that [the plaintiff's] pain rendered him 'quite disabled[,]'" Itemized Statements at 15, is not correct. Dr. Fisher's cited opinion addresses an issue reserved to the commissioner, and thus will not be given any special significance. 20 C.F.R. § 404.1527(d)(1) & (3).

The plaintiff has failed to demonstrate that the administrative law judge was required to adopt Dr. Mulvey's opinion and conclusions. Accordingly, he is not entitled to remand on the basis of his claim that the administrative law judge failed to apply the treating physician rule.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of April, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge